STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| In re: Appeal of Megan Price | } | Docket No. 202-10-99 Vtec |
| | } | |
| | } | Docket No. 31-2-01Vtec |
| | } | |
| In re: Appeal of Garry Bowen | } | |

Decision and Order

Megan Price brought the appeal of Docket No. 202-10-99 Vtec from a site plan approval by the Planning Commission of the Town of Castleton of a barn structure constructed by Appellee-Applicant, Garry Bowen in the RR2A zoning district. Applicant Garry Bowen brought the appeal of Docket No. 31-2-01 from a Notice of Violation issued by the Zoning Administrator and upheld by the Zoning Board of Adjustment (ZBA) of the Town of Castleton alleging that he began construction of the barn structure without a zoning permit. Megan Price is now represented by Jeffrey P. White, Esq., but had represented herself during the pretrial phase of this appeal; Garry Bowen is represented by John Serafino, Esq.; and the Town is represented by John Liccardi, Esq. We will use the parties' names in these consolidated cases, rather than their roles, to avoid confusion. We will also refer to the structure at issue as the ' barn structure' to distinguish it from the house and garage at issue in Docket No. 33-2-01 Vtec (Appeal of Price) also issued today.

An evidentiary hearing was held in these consolidated matters before Merideth Wright, Environmental Judge, who also had taken a site visit with the parties the previous year. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

The property at issue in the present case involves a 19-lot subdivision of ten-acre lots known as the Billow Subdivision, off Pond Hill Road, in which Ms. Price owns 16 lots, Mr. Bowen owns two lots, and another landowner owns the remaining lot. Agricultural and forest uses and one- and two-family dwellings are permitted uses in the zoning district, as are home occupations, accessory uses, and essential services. Access from Pond Hill Road to the lots at issue in this matter is by a private right-of-way sometimes known as Applesauce Hill, shared in common with the other lot owners in the subdivision. The owners in the subdivision do not appear to have a written agreement as to the maintenance of this access road. The parties did not submit into evidence any conditions of the subdivision permit, if any, for the Billow subdivision, that might have required such an agreement. The approval of the Billow subdivision under the Town' s subdivision regulations or under Act 250 might have dealt with the adequacy of access to the other lots in the subdivision, including the proper construction and maintenance of that access, but such approval, if it exists, is not before the Court in any of these appeals.

It is approximately a half mile from Pond Hill Road along this right-of-way to the front or east of Mr. Bowen's Lot 10 and ending at Ms. Price's Lot 9, adjacent to Lot 10 on the north. Another branch of the right-of-way is shown on the subdivision map, extending behind and to the east of Mr. Bowen's Lot 11, giving access to other lots owned by Ms. Price, but not giving access either to Mr. Bowen's Lot 10 or to Ms. Price's Lot 9. The access of the right-of-way onto Pond Hill Road is down a moderately steep slope; water sometimes drains down the right-of-way onto Pond Hill Road, causing icing problems on the end of the right-of-way and onto Pond Hill Road in the winter. Pond Hill Road makes a sharp curve just north of the access road, limiting the available sight distance from the access road. A large horse farm offering activities to the public is located farther to the north on Pond Hill Road.

The private right-of-way is deeded as fifty feet in width, although the traveled way at the present time is approximately a single lane to a lane-and-a-half wide. It is steep in the first section up from Pond Hill Road, levels out, and then goes up steeply again, then going moderately downhill to the Bowen driveway onto Lot 10, and then uphill again to Ms. Price's Lot 9 and other Price lots. It was installed as a gravel road but has washed out in places. Ms. Price and Mr. Bowen have disagreed as to its maintenance in recent years. Mr. Bowen has brought heavy equipment up to his lots over the road, to remove trees from and construct a pond on his property, and in connection with the construction of the barn structure at issue in this case. The transport of heavy equipment over the right-of-way has damaged it[1] from time to time. In connection with the present case, Ms. Price is concerned that Mr. Bowen will continue this practice after the barn structure is built, and will use the barn structure for storage and maintenance of the heavy equipment used in Mr. Bowen's excavation business.

On August 20, 1999, Mr. Bowen filed a " unified permit" application form and sketch plan with the Zoning Administrator to build a 40' x 50' wood structure on Lot 10 for " agricultural/forest use." Ms. Price's lot 9 is located directly to the north of Mr. Bowen's Lot 10. The application requested to change the current " residential/recreational" use of the property to the proposed " agricultural/forest" use and to construct a 2-story structure, 50' in length, 40' in width, and 35' in height. The sketch plan diagram attached to the application did not depict the exact setbacks; rather, it indicated that both side setbacks exceed 30 feet and that both front and rear setbacks exceed 100 feet. No fence is shown on the site plan diagram for Lot 10; no approval of a fence is requested on the unified permit application. At the time of this application no other structures had been built on or proposed for Lot 10.

The Zoning Administrator referred the application to the Planning Commission for site plan approval. Section 600 of the Zoning Ordinance requires the Planning Commission to rule on site plan approval of any use or structure other than one-family and two-family dwellings, prior to the Zoning Administrator's issuance of a zoning permit for that use or structure.

The Planning Commission issued a written decision granting site plan approval on October 6, 1999. On October 12, 1999, the Zoning Administrator issued a zoning permit to Mr. Bowen for the construction of the structure, which he received on October 12, 1999. On October 18, 1999, Ms. Price appealed the issuance of the site plan approval. She did not appeal the zoning permit, and it became final.[2] Mr. Bowen commenced construction of the structure; it is partially completed.

On December 14, 2000, the zoning administrative officer issued a notice of violation to Mr. Bowen for "commenc[ing] construction without a valid permit." The Notice of Violation stated that "the issuance of your Permit #5139 was appealed based upon the action of the Castleton Planning Commission. The permit is not effective until the appeal process is complete." The Notice of Violation gave Mr. Bowen seven days "to take corrective action" without specifying what that corrective action was. Mr. Bowen ceased any further construction by or before that deadline, and appealed the Notice of Violation in what became Docket No. 31-2-01 Vtec.

Only issues 3, 8 and 9 from Ms. Price's original Statement of Questions remained in the case as related to the site plan approval, as of the Court's September 2000 order. Ms. Price at that time was given leave to amend her statement of questions but did not do so. Many of the questions dismissed from this appeal may appropriately be the subject of private litigation between the parties regarding their respective property rights in the subdivision's rights-of-way, or of litigation to interpret or enforce some prior subdivision permit or Act 250 permit for the Billow subdivision. Those questions are not before this court in an appeal of the site plan approval of the barn structure on Lot 10, which is all that is before this court in this appeal.

Question 3 involves the adequacy of the shared private right-of-way for the proposed project, and relates to the "adequacy of traffic access" site plan criterion of § 600. Question 8 questions Mr. Bowen's plans for fencing or screening along the border between Mr. Bowen's Lot 10 and Ms. Price's Lot 9 and relates to the "landscaping and screening" site plan criterion of § 600. Question 9 involves fencing alleged to have been placed by Mr. Bowen "within the deeded, surveyed, 50-foot right-of-way for the development," and relates, if at all, to the adequacy of traffic access site plan criterion of § 600, depending on the location of the fencing at issue in the question. None of Ms. Price's questions relates to the adequacy of on-site circulation or parking on Mr. Bowen's Lot 10, nor to the protection of renewable energy resources, and these site plan criteria will not be further discussed.

Question 3

The right-of-way of the subdivision as designed provides adequate access from Lot 10 to Pond Hill Road for the agricultural and forestry uses of the barn structure at issue in this case, and for the necessary construction of that structure. It is possible that it would not provide adequate access for a more intensive use of the structure for Mr. Bowen's excavation business, but such a use is not requested in the application and is not within the scope of his appeal. The right-of-way serving these lots is sufficiently wide as designed, and is designed with culverts and ditching to prevent runoff and erosion. The parties' dispute as to the maintenance of the right-of-way, including those culverts and ditching, is simply beyond the scope of this appeal, as this appeal only relates to the site plan of Lot 10. The maintenance of the right-of-way must be addressed either in a private lawsuit among the owners in the subdivision, or in an action to amend or enforce any subdivision permit[3] or Act 250 permit that may apply to the Billow subdivision as a whole.

Question 8

The barn structure is located a little more than thirty feet from the boundary between Lot 10 and Lot 9, and meets all the setback requirements of the Zoning Ordinance. No windows or openings face the Price property. It is located in a wooded area; a stand of trees is retained on the Bowen property between the barn structure and the Price boundary line. Additional trees and underbrush are located on the Price side of the line, which is heavily wooded in that location. The trees are tall enough so that their trunks do not entirely screen the blank back side of the barn if viewed from on the boundary line of the Price property just adjacent to the barn structure; however, the barn structure is not readily visible from most other locations on the 10.1-acre Price Lot 9. The barn structure has wood siding and blends into the setting without additional landscaping or screening being necessary to adequately screen the barn structure from the neighboring 10+ acre residential lot.

Of course, we make this finding based on the barn structure's proposed use for agriculture and forestry uses. Any other use of the barn structure would exceed the scope of this site plan approval, as well as raising an enforcement issue with regard to the unappealed zoning permit.

Question 9

The fencing alleged to be in the right-of-way of the subdivision does not relate to Lot 10 at all. Rather, the fencing at issue is at the foot or southeast end of Lot 11, adjacent to Ms. Price's Lot 16. The question of whether the fencing is located within the subdivision's right-of-way is a question of private property rights as between Ms. Price and Mr. Bowen, which may need to be ascertained by a boundary or quiet title action in Superior Court. It does not affect the adequacy of traffic access related to Lot 10 or lots potentially affected by the traffic from Lot 10, which is all that is at issue in the present case.

Notice of Violation

At the time Mr. Bowen commenced construction, he had a permit from the Zoning Administrator for the construction, regardless of whether the Zoning Administrator should have waited to issue the permit until after the site plan approval had become final. Ms. Price appealed the site plan approval, but did not appeal the issuance of the zoning permit, which became final. As established in the line of cases discussed in Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989), once a zoning permit is issued and has become final, the landowner has a right to rely on that permit, even if the zoning administrator lacked authority to issue it. 24 V.S.A. § 4472. Accordingly, Mr. Bowen had not commenced construction without a permit; the notice of violation must be vacated.

Based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 202-10-99 Vtec that site plan approval for the 40' x 50' wood barn structure is GRANTED, for the site plan as approved by the Planning Commission, with the following condition with respect to the adequacy of traffic access, landscaping and screening as provided in § 600:

The structure is approved for agricultural and forest uses only, and not for the operation of an excavation business or any other business operated by Mr. Bowen or any successor landowner,

until or unless such business receives approval for that location as a home occupation or other approved use.

Based on the foregoing, it is hereby ORDERED and ADJUDGED in Docket No. 31-2-01 Vtec that the Notice of Violation issued by the Zoning Administrator and upheld by the ZBA is vacated, as it alleges that Mr. Bowen commenced construction without a permit, but he in fact had a zoning permit for that work.

Done at Barre, Vermont, this 14th day of January, 2002.

_____
Merideth Wright
Environmental Judge

## Footnotes

[1]. If the transportation of heavy equipment over Pond Hill Road has exceeded the weight limit for Pond Hill Road, or required a special permit from the Town, that is a matter for the Town's enforcement of its weight limit regulations and not within the scope of the zoning ordinance.

[2]. Mr. Bowen argues that this appeal should be dismissed as moot, as he has the right to build in accordance with his unappealed zoning permit. While it is true that that permit has become final, it is possible that additional conditions could be imposed with relation to the standards required for site plan approval, and therefore this appeal is not moot.

[3]. The requirements of Section 702(4) apply to the Planning Commission's approval of lots served by a private right-of-way, and should have been considered by the Planning Commission if any subdivision permit was issued for the Billow subdivision. However, no such permit has been provided to the Court and, if one exists, it has long since become final.